FILED

2013 Nov-04  AM 08:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BONNIE FAYE SAMMONS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:13-cv-348-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Bonnie Faye Sammons brings this action pursuant to Section
205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review
of the final adverse decision of the Commissioner of the Social Security
Administration ("SSA").  This court finds that the Administrative Law Judge's
("ALJ") decision - which has become the decision of the Commissioner - is
supported by substantial evidence and, therefore, **AFFIRMS** the decision denying
benefits.

### I. Procedural History

Sammons filed her applications for Title II Disability Insurance Benefits
and Title XVI Supplemental Security Income on January 25, 2010, alleging a

disability onset date of March 9, 2007 due to spinal fusion, post lavidic syndrome, blood clots, and swelling in her left leg. (R. 66, 127, 151, 156). After the SSA denied her applications on May 6, 2010, Sammons requested a hearing. (R. 78-79, 99). At the time of the hearing on October 27, 2011, Sammons was 47 years old, had a high school diploma, and past relevant light and skilled work as a manager trainee, light and semiskilled work as a cashier/stocker, and heavy and semi-skilled work as a laborer. (R. 11, 14, 39). Sammons has not engaged in substantial gainful activity since March 9, 2007. (R. 152).

The ALJ denied Sammons's claim on December 28, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review on December 21, 2012. (R. 1-5, 64). Sammons then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Sammons had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One.  (R. 66).  Next, the ALJ acknowledged that Sammons's severe impairments of "degenerative disc disease of the lumbar spine, lower extremity edema on the left side secondary to [deep vein thrombosis], obesity and carpal tunnel syndrome" met Step Two.  (R. 66). The ALJ then proceeded to the next step and found that Sammons did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Sammons

> has the residual functional capacity [RFC] to perform sedentary work
> [ ] except that she could lift up to 20 pounds occasionally; sit for 6
> hours in an 8-hour workday; stand and walk for 2 hours in an 8-hour
> workday; would need a sit/stand option; no pushing or pulling
> (foot/leg controls); could occasionally climb, balance, stoop; never
> kneel, crouch or crawl; should avoid concentrated exposure to
> extreme cold, extreme heat, continuous vibration, hazardous

machinery; no work around unprotected heights; and would be
limited to non-complex job tasks to which contact with the general
public is brief.

(R. 67).  In light of Sammons's RFC, the ALJ determined that Sammons was

"unable to perform any past relevant work."  (R. 72).  The ALJ then moved on to

Step Five where he considered Sammons's age, education, work experience, and

RFC, and determined that there are "jobs that exist in significant numbers in the

national economy that claimant can perform."  *Id.*  As a result, the ALJ answered

Step Five in the negative and determined that Sammons is not disabled.  (R. 73);

*see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

The court turns now to Sammons's contentions that the ALJ erred in finding

that she failed to meet the disability standard.  Doc. 9 at 5-12.  For the reasons

stated below, the court finds that the ALJ's opinion is supported by substantial

evidence.

*A.    Additional functional limitations*

Sammons's first contention of error is that the ALJ failed to properly

consider her "manipulative functioning consistent with the severe impairment of

carpal tunnel syndrome" in the RFC.  Doc. 8 at 5.  Unfortunately, Sammons failed

to point to any evidence that suggests that the ALJ's RFC finding was inconsistent

with her carpal tunnel syndrome.  The sparse evidence related to the carpal tunnel syndrome begins in June 2005, when Dr. William Hartzog diagnosed Sammons with bilateral carpal tunnel syndrome and performed carpal tunnel releases on Sammons's right and left wrists in July and October 2005, respectively.  (R. 233, 236, 240).  After several post operative evaluations, Sammons visited Dr. Hartzog on November 10, 2005 for her final post operative examination, during which Dr. Hartzog noted that Sammons was "a little sore with certain maneuvers, but all symptoms of numbness, tingling, and dysesthesia are essentially resolved."  (R. 245).

The next reference to Sammons's carpal tunnel syndrome occurs three years later in December 2008 when Sammons visited Dr.  Hartzog complaining of arthritis in her hands and pain "at the base thumb" and "with gripping and holding and as such, has concerns about dropping grandchild and babies she carries, etc." (R. 241).  Dr. Hartzog noted "no significant problems related to the carpal tunnel releases," occasional "numbness with the hands at night, but not classic carpal tunnel issues and no evidence or level of complaints compatible with significant recurrence," and tenderness during compression "over the dorsal aspect of the CMC [carpometacarpal] joints bilaterally."  *Id*.  Dr. Hartzog ordered an x-ray that revealed "early changes of CMC arthritis in both thumbs," "no other significant

radial carpal arthritis," possible "associated 1st dorsal compartment tenosynovitis," and "the remainder of the exam is negative." *Id.* Consequently, Dr. Hartzog prescribed Sammons an arthritis medication, advised Sammons to ice her joints, and recommended a brace to stabilize the CMC joints. *Id*.

Finally, on May 1, 2010, Dr. Sathyan Iyer performed a musculoskeletal examination and noted that Sammons had full range of motion in both wrists, normal grip strength and opposition function, and decreased sensitivity over the thumbs, and opined that Sammons "may have some impairment of functions involving . . . lifting [and] carrying." (R. 273-75).

There is nothing in this record – and, significantly, Sammons failed to present any evidence – that contradicts the ALJ's RFC finding that Sammons is able to occasionally lift up to twenty pounds or supports Sammons's contention that the ALJ failed to properly consider her carpal tunnel syndrome. Accordingly, the ALJ's determination is supported by substantial evidence.

B.     *Social Security Rulings ("SSR") 96-8p, 83-12, and 96-9p*

Sammons contends next that the ALJ failed to comply with certain SSRs because the ALJ's decision was "overly broad" and failed to provide a function by function analysis of Sammons's impairments and the "required amount of time spent in each function of sitting and standing." Doc. 8 at 5-6, 7. These

contentions are unavailing for several reasons.  First, SSR 83-12, The Medical-Vocational Rules as a Framework for Evaluation Exertional Limitations Within a Range of Work or Between Ranges of Work, is inapplicable here since the ALJ relied on the vocational expert, instead of the Medical Vocational Rules, to show the availability of jobs that Sammons can perform.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted).  Second, contrary to Sammons's contention, consistent with SSR 96-8p[1] and 20 C.F.R. § 404.1545(b), the ALJ specifically assessed Sammons's physical ability to push, pull, climb, balance, stoop, kneel, crouch, crawl, and determined that Sammons can sit for six hours and stand and walk for two hours in an eight hour work day and required a sit and stand option.  (R. 66-67).  Importantly, the ALJ included this information in the hypothetical he provided to the vocational expert and factored in the RFC the vocational expert's determination that jobs exist that Sammons could perform.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  Finally, Sammons's contention that the ALJ's RFC finding for less than a full range of

---

[1]SSR 96-8p states, in relevant part:

Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, carrying, pushing, and pulling.  Each function must be considered separately (e.g., "the individual can walk for 5 our of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., walk/stand, lift/carry, push/pull).

sedentary work was "neither accurate nor consistent," as required by SSR 96-9p,

doc. 8 at 5, misses the mark because SSR 96-9p, which outlines the implications of

a RFC for less than a full range of sedentary work, is inapplicable here in light of

the ALJ's RFC determination that Sammons is capable of performing a full range

at sedentary work or more.  *See* 20 C.F.R. § 404.1567(a).  Therefore, Sammons's

contentions are unavailing and the ALJ's decision is supported by substantial

evidence.

C.     *Vocational expert testimony*

        Sammons contends next that the ALJ provided the vocational expert a

hypothetical that failed to account for severe carpal tunnel syndrome because it

included the ability to occasionally lift up to twenty pounds and skewed the

occupational job base by including jobs that Sammons cannot perform. Doc. 8 at

6-7.  This contention ignores that the ALJ presented a comprehensive hypothetical

to the vocational expert that included all of Sammons's RFC limitations.  (R. 40).

For example, the ALJ's hypothetical accounted for the severe degenerative disc

disease and carpal tunnel syndrome by restricting Sammons to occasionally lifting

twenty pounds and imposing postural limitations.  (R. 66-67).  The ALJ's

hypothetical also considered Sammons's lower extremity edema by excluding

push and pull foot and leg controls, and limiting her ability to climb, balance,

stoop, kneel, crouch, or crawl.   *Id.*  Ultimately, based on the ALJ's hypothetical,

the vocational expert determined that Sammons could not perform any past

relevant work, but determined that other jobs existed that Sammons could perform.

(R. 41).  These findings are supported by substantial evidence.[2]

 In the final analysis, Sammons failed to present any evidence to show that

the ALJ erred when he relied on the vocational expert to conclude that Sammons

was "capable of making a successful adjustment to other work that exists in

significant numbers in the national economy."  (R. 73).  In fact, based on the

record before this court, the ALJ's comprehensive hypothetical took into account

Sammons's full impairments.  Therefore, it is supported by substantial evidence.

*See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

D. *Opinion evidence*

 Sammons also asserts that Dr. Sathyan Iyer's opinion, which the ALJ gave

"some weight," was "very general" and "not vocationally quantifiable, particularly

as to standing and lifting."  Doc. 8 at 11.  Dr. Iyer reviewed Sammons's medical

records, completed a musculoskeletal examination where he found that Sammons

---

[2]Sammons's related contention that the vocational expert's testimony that Sammons
could not perform any jobs if she had only occasional use of her hands established that she is
disabled, doc. 8 at 6, also misses the mark because the medical evidence regarding Sammons's
carpal tunnel syndrome failed to demonstrate that Sammons is restricted to occasional use of her
hands.  *See supra*, sec. V.(A).

had full range of motion in her neck, shoulder, elbows, lumbar spine, knees, hips,

ankles, and wrists, normal opposition function, muscle power in her upper

extremities, and strength in her hands, and diagnosed Sammons with status post

L4-5 interbody fusion, status post bilateral carpal tunnel release surgery, lower

extremity edema on the left side secondary to deep vein thrombosis, and obesity.

(R. 275).  Based on his evaluation, Dr. Iyer opined that Sammons "may have some

impairment of functions involving standing for long periods, bending, lifting,

[and] carrying.  She does not have significant limitation of function involving

sitting, walking, hearing, and speaking."  *Id*.  This assessment belies Sammons's

contention that Dr. Iyer provided a "very general" assessment of Sammons's

functional abilities and failed to quantify her range of motion and strength.  To the

contrary, Dr. Iyer addressed Sammons's functional abilities, and, as a result,

consistent with Dr. Iyer's role as a consultative examiner, the ALJ gave Dr. Iyer's

opinion "some weight."  (R. 72); *see* 20 C.F.R. § 404.1527(c)(2).  Based on a

review of the record, the court finds that Dr. Iyer's opinion is substantiated by his

medical examination and Dr. Hartzog's evaluation, and that the ALJ's decision to

give Dr. Iyer's opinion some weight is supported by substantial evidence.

E.      *Medical source opinion*

Finally, Sammons contends that the ALJ erred in failing to seek a medical source opinion to more fully develop the record in light of the evidentiary gaps in Sammons's medical records in 2010 and 2011.  Doc. 8 at 11-12.  Although the ALJ "has a basic duty to develop a full and fair record," "the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a).  As such, the ALJ is not obligated to automatically obtain testimony from a medical expert or additional medical source opinion.  This is especially the case, where, as here, the medical evidence confirmed that Sammons's RFC would not impede Sammons from performing other work.  (R. 41).  Ultimately, Sammons must meet her burden of proving that she is disabled, *see* 20 C.F.R. § 416.912(c), and failed to do so in this case.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Sammons is not disabled is supported by substantial evidence, and that the ALJ  applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance

with the memorandum of decision will be entered.

Done the 4th day of November, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE